No. 21-3755

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

JAMIE LEONARD,

*Plaintiff/Appellant,*

v.

ST. CHARLES COUNTY, STEVEN HARRIS, DONTE FISHER,
LISA BAKER, and THERESA MARTIN,

*Defendants/Appellees.*

## PLAINTIFF-APPELLANT'S PETITION
## FOR REHEARING EN BANC

Cal Barnett-Mayotte*
RODERICK & SOLANGE
 MACARTHUR JUSTICE CENTER
501 H St. NE, Suite 275
Washington, DC 20002

Steven A. Donner
Thomas R. Applewhite
DONNER APPLEWHITE,
ATTORNEYS AT LAW
906 Olive Street, Suite 1110
St. Louis, MO 63101

Gary K. Burger
BURGER LAW, LLC
500 N. Broadway, Suite 1860
St. Louis, MO 53101

Amy E. Breihan
RODERICK & SOLANGE
 MACARTHUR JUSTICE CENTER
906 Olive Street, Suite 420
St. Louis, MO 63101
(314) 254-8540
amy.breihan@macarthurjustice.org

*Admitted only in Pennsylvania; not admitted in D.C. Practicing under the
supervision of the Roderick & Solange MacArthur Justice Center.*

*Counsel for Plaintiff-Appellant Jamie Leonard*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................i

TABLE OF AUTHORITIES .......................................................ii

INTRODUCTION AND RULE 35(B) STATEMENT.............................. 1

STATEMENT OF THE CASE ................................................ 1

I.    Factual Background ................................................ 1

II.   Procedural Background.............................................. 6

SUMMARY OF ARGUMENT ................................................ 7

ARGUMENT ........................................................... 9

I.    The panel's opinion excusing Defendant Nurse Martin of liability for her deliberate indifference conflicts with decisions of this Circuit and the Supreme Court........................... 10

II.   Defendant Sergeant Baker violated clearly established law, and the panel fumbled the summary judgment standard to conclude otherwise. ....................................... 18

CONCLUSION ......................................................... 20

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 35(b)(2) ........................................................... 22

CERTIFICATE OF SERVICE................................................ 23

Appellate Case: 21-3755   Page: 2   Date Filed: 03/10/2023 Entry ID: 5253910

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Coleman v. Parkman,*
    349 F.3d 534 (8th Cir. 2003)...............................................................19

*Cummings v. Roberts,*
    628 F.2d 1065 (8th Cir. 1980)............................................................13

*Dadd v. Anoka Cnty.,*
    827 F.3d 749 (8th Cir. 2016).....................................................*passim*

*Dyer v. Houston,*
    964 F.3d 374 (5th Cir. 2020)..............................................................14

*Estelle v. Gamble,*
    429 U.S. 97 (1976)...........................................................9, 10, 14, 15

*Gordon ex rel. Gordon v. Frank,*
    454 F.3d 858 (8th Cir. 2006)..............................................................16

*Helphenstine v. Lewis Cnty.,*
    60 F.4th 305 (6th Cir. 2023) .............................................................14

*Johnson v. Hay,*
    931 F.2d 456 (8th Cir. 1991).....................................................1, 11, 12

*Langford v. Norris,*
    614 F.3d 445 (8th Cir. 2010)...........................................................1, 13

*Lucas v. Turn Key Health Clinics, LLC,*
    58 F.4th 1127 (10th Cir. 2023) ..........................................................13

*MacKintrush v. Pulaski Cnty. Sheriff's Dep't,*
    987 F.3d 767 (8th Cir. 2021)..............................................................15

*Nelson v. Corr. Med. Servs.,*
    583 F.3d 522 (8th Cir. 2009) (en banc)...............................................15

*Olson v. Bloomberg,*
    339 F.3d 730 (8th Cir. 2003)......................................................9, 13, 19

Appellate Case: 21-3755    Page: 3    Date Filed: 03/10/2023 Entry ID: 5253910

*Palakovic v. Wetzel*,
854 F.3d 209 (3d Cir. 2017) ................................................................ 14

*Petties v. Carter*,
836 F.3d 722 (7th Cir. 2016) (en banc) ............................................. 14

*Pool v. Sebastian Cnty.*,
418 F.3d 934 (8th Cir. 2005) ............................................................... 16

*Rokusek v. Jansen*,
899 F.3d 544 (8th Cir. 2018) ......................................................... 15, 16

*Smith v. Jenkins*,
919 F.2d 90 (8th Cir. 1990) ................................................................. 12

*Sours v. Big Sandy Reg'l Jail Auth.*,
593 F. App'x 478 (6th Cir. 2014) ....................................................... 16

*Stoner v. Watlingten*,
735 F.3d 799 (8th Cir. 2013) ............................................................... 15

*Thompson v. Upshur Cnty.*,
245 F.3d 447 (5th Cir. 2001) ............................................................... 14

*Tlamka v. Serrell*,
244 F.3d 628 (8th Cir. 2001) ............................................................... 17

*Tolan v. Cotton*,
572 U.S. 650 (2014) (per curiam) ....................................................... 19

## Other Authorities

Fed. R. App. P. 35(b)(1) ............................................................................ 1

Appellate Case: 21-3755   Page: 4   Date Filed: 03/10/2023 Entry ID: 5253910

# INTRODUCTION AND RULE 35(B) STATEMENT

St. Charles County jail staff booked Jamie Leonard into jail in the midst of a mental health crisis; refused to administer his prescribed medication that they knew would end that crisis; pepper-sprayed him in an infected eye at close range; then stood by and watched him gouge his eye out. AA481 R. Doc. 101-23, at 24. A panel of this Court affirmed the grant of summary judgment to all defendants.

Rehearing *en banc* is warranted under Fed. R. App. P. 35(b)(1) to secure or maintain uniformity of this Court's decisions. As it stands, the panel decision conflicts with this Court's decisions in *Dadd v. Anoka Cnty.*, 827 F.3d 749 (8th Cir. 2016); *Langford v. Norris*, 614 F.3d 445 (8th Cir. 2010); and *Johnson v. Hay*, 931 F.2d 456 (8th Cir. 1991).

## STATEMENT OF THE CASE

## I.  Factual Background

Jamie Leonard was in the midst of a psychotic episode at the time of his arrest and booking into St. Charles County Jail. He also suffered from Reiter's syndrome, which caused a painful, inflammatory eye condition called uveitis. AA124-25 R. Doc. 101-1, at 1-2. For these conditions, Mr. Leonard had prescriptions for several pain medications

1

and five psychiatric medications, and received monthly psychiatric care. AA124-25 R. Doc. 101-1, at 1-2.

Mr. Leonard's serious mental health needs came as no surprise to the jail. Defendant Nurse Martin knew that Mr. Leonard's mother had advised the jail's Medical Department of Mr. Leonard's mental illness—and, per the jail's instructions, had delivered his prescribed psychiatric medications to the Medical Department. AA400-02 R. Doc. 101-13, at 7-9; AA274 R. Doc. 101-9, at 2. And the jail documented his mental illness in numerous places. AA154 R. Doc. 101-4, at 2; AA156, 159 R. Doc. 101-5, at 2, 5.

Mr. Leonard's struggles soon manifested in tragic and obvious ways. Two days into his detention, he stuck his fingers into his nose until it bled and attempted suicide by sticking his fist down his throat. AA402 R. Doc. 101-13, at 9. When Defendant Martin asked Mr. Leonard why he was behaving that way, he told her: "I have to get my soul out because it is time for me to die." AA277 R. Doc. 101-10, at 2; AA404, 408 R. Doc. 101-13, at 11, 15.

But no jail staff ever administered Mr. Leonard's prescribed medication. AA23 R. Doc. 88, at 9; AA52 R. Doc. 91, at 7; AA273-75 R.

2

Doc. 101-9, at 1-3. That failure was not the product of ignorance; Defendant Nurse Martin knew Mr. Leonard had prescribed psychiatric medication and witnessed his "bizarre" behavior. AA402 R. Doc. 101-13, at 9; AA277, 279 R. Doc. 101-10, at 2, 4.

The jail also had in stock the effective and common anti-psychotic Haldol, which EMTs later used to calm Mr. Leonard. AA369 R. Doc. 101-12, at 35; AA406 R. Doc. 101-13, at 13; AA300 R. Doc. 101-11, at 21. Defendant Martin did not administer Haldol, either. AA406 R. Doc. 101-13, at 13. Instead, she sent Mr. Leonard to a suicide-prevention unit, where he continued to decompensate and behave erratically. AA404 R. Doc. 101-13, at 11.

The next morning, three officers searched Mr. Leonard's suicide-prevention cell. AA535-36 R. Doc. 101-26, at 3-4. During the search, Defendant Harris pepper-sprayed a naked, handcuffed, and surrounded Mr. Leonard directly into his diseased eye from far less than the four feet that County policy and industry standards require, even though Harris testified that he did not perceive Mr. Leonard as a serious physical threat. AA171-72 R. Doc. 101-6, at 12-13; AA536 R. Doc. 101-26, at 4; AA573 R. Doc. 101-30, at 3; AA602 R. Doc. 101-35; AA555-56 R. Doc. 101-

3

27, at 13-14. Mr. Leonard's Reiter's syndrome made his eyes particularly vulnerable to pepper spray, which caused him "an indescribable amount of pain." AA125 R. Doc. 101-1, at 2; AA151 R. Doc. 101-3, at 9; AA171-72 R. Doc. 101-6, at 12-13. Nobody decontaminated Mr. Leonard or took him to medical. AA30 R. Doc. 88, at 16; AA56 R. Doc. 91, at 11; AA405 R. Doc. 101-13, at 11.

Instead, the officers left Mr. Leonard in his cell, where his mental state deteriorated. *See* AA603 R. Doc. 101-36. Surveillance footage shows Mr. Leonard pacing his cell, yelling, grimacing, shaking his head, and trying to clear the pepper spray from his face for nearly five minutes. *Id.* at 0:00-4:39. For another two minutes and twenty seconds, he tears at his left eye, using his fingers to dig into the socket. *Id.* at 4:39-7:00. He then falls to the floor and almost immediately leaks blood out of his eye. *Id.* at 7:00-7:40. Uninterrupted by the jail staff watching from outside his cell, he continues to dig at his eye and blood continues to leak on the floor as he squirms, bloody and on the floor, for two more minutes. *Id.* at 7:00-9:15. Thirty seconds later, Mr. Leonard tears his eyeball from its socket. *Id.* at 9:45-10:00.

4

Early in this gruesome scene, the officer on duty summoned Sgt. Baker to the cell. AA216 R. Doc. 101-7, at 12. Sgt. Baker testified that she stood outside Mr. Leonard's cell while he tore his eye out. *Id.* She testified that she could "see some blood on the floor" while watching Mr. Leonard from outside his cell, but "waited for [more] officers" instead of intervening. AA215-16 R. Doc. 101-7, at 11-12.

Medical was called; Defendant Martin testified that when she arrived at Mr. Leonard's cell she found "four or five" officers present and was "surpris[ed]" that no one had "tried to prevent [Mr. Leonard] from self-harm[ing]." AA397 R. Doc. 101-13, at 4. According to Defendant Martin, those officers—Defendant Baker among them—"knew that he was clawing at his eye at that time" because "they could see it through the window." *Id.*

Director Daniel Keen, Defendants' expert and the County's current jail director, testified that "plenty of officers were there [such] that we could have stepped in to stop him or attempt to stop him from injuring himself more." AA245 R. Doc. 101-8, at 22. Plaintiff's expert agreed: after reviewing the video, Ken Katsaris found it "abundantly clear" that "officers simply watched" as Mr. Leonard gouged his own eye out. AA174

5

R. Doc. 101-6, at 15. Mr. Katsaris summarized their inaction as "the most egregious failure" he had ever reviewed in a correctional facility. *Id.*

Officers finally entered Mr. Leonard's cell. AA603 R. Doc. 101-36, at 9:10. Paramedics arrived and administered Haldol, the sedative and anti-psychotic medication that the County had in stock but had not previously used on Mr. Leonard. AA406 R. Doc. 101-13, at 13; AA300-01 R. Doc. 101-11, at 21-22. The Haldol immediately sedated Mr. Leonard. AA300-01 R. Doc. 101-11, at 21-22. Mr. Leonard was then taken to a hospital, where his eye was declared permanently lost. AA132-34 R. Doc. 101-2, at 7-9.

## II.    Procedural Background

Mr. Leonard sued St. Charles County, Steven Harris, Donte Fisher, Lisa Baker, and Theresa Martin, asserting claims for excessive force, deliberate indifference, and municipal liability. AA37-44 R. Doc. 88, at 23-30. The district court denied Mr. Leonard's motion for summary judgment and granted Defendants' motion in full. AA692 R. Doc. 124, at 1.

A panel of this Court affirmed. Op. at 2. The panel acknowledged that the qualified immunity analysis as to Mr. Leonard's deliberate

6

indifference claim against Defendant Nurse Martin for her refusal to administer his prescribed medication was a "close call," but concluded that clearly established law prohibited only "a *complete* failure" to attend to Mr. Leonard. Op. at 10. Because Defendant Martin had done *something*—placed Mr. Leonard in a suicide-prevention cell—the panel believed that qualified immunity protected her. *Id.* at 11.

In considering whether Defendant Sergeant Baker had been deliberately indifferent when she watched Mr. Leonard gouge out his own eye, the panel deferred to Baker's testimony that she wanted to wait for "appropriate backup." Op. at 8. Based on that testimony and the panel's speculation that Mr. Leonard was a "dangerous man," it concluded that Sgt. Baker was not deliberately indifferent. *Id.*

It is these two points of the panel's opinion—affirming the grant of summary judgment to Nurse Martin and Sgt. Baker—that this timely-filed petition for rehearing *en banc* seeks to correct.

## SUMMARY OF ARGUMENT

**I.** Defendant Nurse Martin violated clearly established law when she refused to treat Mr. Leonard, a detainee in the throes of an obvious psychotic episode, with prescribed psychiatric medication that she had

7

on hand. The panel held that the only course of action that clearly established law proscribed was *nothing*, and that Defendant Martin merited qualified immunity because she did *something*: She placed Mr. Leonard in a suicide prevention cell. That's not the rule, in this circuit or in any. The law does not excuse constitutionally inadequate care because it is *some* care.

**II.** Defendant Sergeant Baker, the suicide-prevention unit supervisor, violated clearly established law when she watched Mr. Leonard claw his eye out of its socket for minutes and did nothing. The panel held that Defendant Baker complied with constitutional minima because she opted to wait for "appropriate backup" rather than intervene. It reached that conclusion by inappropriately crediting, at summary judgment, Defendant Baker's testimony over conflicting testimony of, *inter alia*, defendants' expert himself, who explained that there was "plenty" of backup to intervene. This serious misapplication of the summary judgment standard sketches a blueprint for deliberately indifferent officials to evade liability.

Appellate Case: 21-3755     Page: 12     Date Filed: 03/10/2023 Entry ID: 5253910

## ARGUMENT

Despite having Mr. Leonard's prescribed psychiatric medication on hand—and knowing of his need for it—Defendant Nurse Martin refused to treat him, instead simply moving him to a suicide-prevention cell to continue to suffer. And, when Defendant Sergeant Baker saw Mr. Leonard clawing his eye out in that cell, she did even less: she stood by and watched.

Both defendants exhibited egregious deliberate indifference to Mr. Leonard's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Two seminal examples of deliberate indifference include "intentionally interfering with [medical] treatment once prescribed," *id.*, and permitting prisoners to self-harm, *Olson v. Bloomberg*, 339 F.3d 730, 738 (8th Cir. 2003).

The panel erroneously upheld the grant of qualified immunity to Defendants Martin and Baker. In so holding, the panel strayed from decades of law from this Court, its sister courts, and the Supreme Court. And it drew a blueprint for indifferent officials to evade accountability for their refusal to fulfill their most basic constitutional "obligation to

9

provide medical care" for those "who cannot by reason of the deprivation of [their] liberty, care for [themselves]." *Estelle*, 429 U.S. at 103-04.

## I. The panel's opinion excusing Defendant Nurse Martin of liability for her deliberate indifference conflicts with decisions of this Circuit and the Supreme Court.

Confronted with a man who explained that he stuck his fist down his throat "to get [his] soul out because it is time for [him] to die," Defendant Martin refused to dispense the medication she knew he was prescribed—medication to which she had easy access in two different ways. Defendant Martin did not treat Mr. Leonard at all, opting instead for ineffective surveillance. Clearly established law forbade that course of action.

Though the panel considered it "a close call," Op. at 10, it believed that qualified immunity protected Defendant Martin's refusal to administer Mr. Leonard's prescribed medication because it interpreted clearly established law to forbid only a "*complete* failure to treat" a serious medical condition. *Id.* The panel therefore held that Defendant Martin lacked fair warning that she needed to treat a prisoner in the throes of a mental health crisis so long as she did something, anything,

else. *Id.* at 10-11. And Defendant Martin "*did*" do something, literally speaking: She placed Mr. Leonard in a suicide-prevention cell. *Id.* at 10.

But the question is not whether Martin did *something*, but whether she did what clearly established law demands. In holding otherwise, the panel's decision conflicts with this Court's decision in *Dadd v. Anoka Cnty.*, 827 F.3d 749 (8th Cir. 2016), as well as countless other cases from this Court, its sister courts, and the Supreme Court. In doing so, it set a dangerous and unsupported precedent shielding from constitutional scrutiny jail and prison officials who take any "precautionary measure[]" at all—even if that measure involves abandoning prescribed medication. Op. at 10.

First, consider this Court's precedent. *Dadd* made clear that withholding "prescribed medicine" for a reason other than "a medical judgment" violates the Constitution where it causes unnecessary suffering. *Dadd*, 827 F.3d at 756. That's because, absent a medical reason to withhold prescribed medicine, withholding it is not a mere mistake, "but rather indifference." *Id.* That was not a new proposition for this Court. *See, e.g.*, *Johnson v. Hay*, 931 F.2d 456, 462 (8th Cir. 1991) (Eighth Amendment violation where the plaintiff didn't just "disagree[] with the

11

course of treatment selected by his physician" but rather showed that a defendant "deliberately disregarded the very course of treatment prescribed by his physicians").[1]

The panel believed that *Dadd* only proscribed "a *complete* failure" to treat a serious medical condition. Op. at 11. But that's wrong. In fact, the panel revived an argument that *Dadd* itself rejected; in *Dadd*, this Court called "unavailing" the defendant's "argument that the minimal medical attention [the plaintiff] received was adequate" to merit qualified immunity. *Dadd*, 827 F.3d at 755. *Dadd*, in other words, did not involve the complete absence of medical attention, but constitutionally inadequate "minimal" medical attention—just what we have here.

*Dadd*'s rejection of the argument that providing *any* medical attention averts constitutional scrutiny followed from both common

---

[1] *Hay* arguably imposes an even stricter rule. *Hay* held that a prison pharmacist violated clearly established Eighth Amendment law when he withheld prescribed medication "based on his determination that the . . . medications were not appropriate" after a "review of [the plaintiff's] medical records and discussions" with a doctor. *Id.* at 458. *See also Smith v. Jenkins*, 919 F.2d 90, 92-93 (8th Cir. 1990) (reversing grant of summary judgment to doctor who terminated prescription for psychiatric medication "based upon clinical judgment" so a jury could consider whether that judgment "so deviated from professional standards that it amounted to deliberate indifference").

Appellate Case: 21-3755     Page: 16     Date Filed: 03/10/2023 Entry ID: 5253910

sense and a consistent line of this Court's cases holding the same. In the Eighth Circuit, as in the rest of the country, providing grossly incompetent care does not excuse constitutional liability:

> [A] total deprivation of care is not a necessary condition for finding a constitutional violation: "Grossly incompetent or inadequate care can also constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment."

*Langford*, 614 F.3d at 460 (quoting *Smith*, 919 F.2d at 93); *see also Olson*, 339 F.3d at 737-38 (Eighth Amendment violation where it was "undisputed" that the defendant "took some measures" to prevent a suicide, including "trying to convince" the victim not to commit suicide and calling a code red emergency); *Cummings v. Roberts*, 628 F.2d 1065, 1067-68 (8th Cir. 1980) (Eighth Amendment violation for failure "to carry out the treatment prescribed" even though the plaintiff "was seen numerous times by doctors" and "was given some medical care").

In reviving the rejected *Dadd* argument, the panel split also from the consensus of courts around the country. *See, e.g.*, *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1138 (10th Cir. 2023) ("deliberate indifference may arise from a failure to treat *properly*," because "providing some care does not insulate a medical professional from

13

liability"); *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 322 (6th Cir. 2023) (deliberately indifferent to "prescribe[] antiemetics and ... orally rehydrate" the plaintiff when the doctor knew the plaintiff "needed IV fluid replacement and hospital-grade care"); *Petties v. Carter*, 836 F.3d 722, 728-29 (7th Cir. 2016) (en banc) ("[A]n inmate is not required to show that he was literally ignored by prison staff to demonstrate deliberate indifference."); *Dyer v. Houston*, 964 F.3d 374, 384 (5th Cir. 2020) (providing "some care" to a "delusional detainee who was severely harming himself" fell short of the constitutional minimum where "the jailer recklessly misjudged the severity" of the detainee's condition (discussing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 453-54, 463-64 (5th Cir. 2001))); *Palakovic v. Wetzel*, 854 F.3d 209, 227-28 (3d Cir. 2017) (prescribing mentally ill prisoner medication and ensuring he had visits from mental health staff was deliberately indifferent because "some care" can be "insufficient to satisfy constitutional requirements").

This consensus includes longstanding Supreme Court precedent. In its seminal deliberate indifference case, the Supreme Court offered "intentionally interfering with [medical] treatment once prescribed" as a classic example of deliberate indifference. *Estelle*, 429 U.S. at 104-05.

Appellate Case: 21-3755    Page: 18    Date Filed: 03/10/2023 Entry ID: 5253910

That same case made clear that offering *some* treatment does not immunize officials from liability. *Id.* at 104 n.10 ("[C]hoosing the 'easier and less efficacious treatment' . . . may be attributable to 'deliberate indifference . . . rather than an exercise of professional judgment.'" (citing *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974))).

Rather than establishing a blanket rule that providing *some* care entitles an official to qualified immunity, the panel might have meant simply that *Dadd*, standing alone, did not clearly establish the law. But it didn't need to. Setting aside the mischaracterization of *Dadd*, *see supra*, this reasoning fails because this Court need not have condemned "the very action in question" for qualified immunity to dissipate. *Rokusek v. Jansen*, 899 F.3d 544, 548 (8th Cir. 2018); *MacKintrush v. Pulaski Cnty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021). Instead, the Court applies "a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." *Stoner v. Watlingten*, 735 F.3d 799, 803 (8th Cir. 2013); *see also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 531 (8th Cir. 2009) (en banc).

15

Even a conservative reading of *Dadd* extracts the rule that withholding prescribed medication from a detainee in obvious need of it violates the Constitution absent an "adequate" alternative. *Dadd*, 827 F.3d at 756. *Dadd* itself may not have established that ordering *observation* of a detainee who obviously needs *treatment* is not an "adequate" alternative. But a host of other cases did. *See, e.g., Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862-63 (8th Cir. 2006) (officer violated clearly established law where she "did nothing other than observe" a prisoner "with obvious signs of medical distress"); *Pool v. Sebastian Cnty.*, 418 F.3d 934, 939-42, 945 (8th Cir. 2005) (deliberate indifference to place a pregnant and bleeding prisoner "in an observation cell" "under constant video surveillance"); *Sours v. Big Sandy Reg'l Jail Auth.*, 593 F. App'x 478, 480, 486 (6th Cir. 2014) (nurse violated clearly established law where "she took *some* actions . . . including placing [the plaintiff] in a medical observation cell," "instructing the guards to monitor" him, and placing him on a special diet, but did not administer insulin). *Dadd* alone gave Defendant Martin "fair warning." *See Rokusek*, 899 F.3d at 548. In combination with other prevailing precedent, it was practically a siren.

Appellate Case: 21-3755   Page: 20   Date Filed: 03/10/2023 Entry ID: 5253910

The panel latched on to the proposition that "liability is not automatic" when officials fail to dispense prescribed medication. Op. at 10. Instead, liability "may" follow—where "the word 'may' leaves room for consideration of the specific facts and circumstances of the case." *Id.* This is undoubtedly true. For one, injury, of course, must result. For another, the failure must not be justified on other grounds. *See, e.g.*, *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (constitutionality of delayed medical care "depends on the seriousness of an inmate's medical condition and on the reason for the delay"). And comparable alternatives to prescribed medication can suffice. Here, for instance, Defendant Martin could have administered the in-stock Haldol rather than Mr. Leonard's precise prescription. *See* Opening Br. at 48.

But in "the specific facts and circumstances" of this case, relegating Mr. Leonard to a suicide-prevention cell for surveillance instead of offering him any treatment—when his medication sat at her fingertips— was not a constitutionally adequate alternative. Cases from this and other courts clearly proscribed Defendant Martin's choice of surveillance over treatment. That she did *something* doesn't excuse the violation. In holding otherwise, the panel opinion conflicts with this Court's

17

longstanding precedent and splits with courts across the country. That error warrants rehearing or *en banc* intervention.

## II. Defendant Sergeant Baker violated clearly established law, and the panel fumbled the summary judgment standard to conclude otherwise.

While Defendant Martin did something (inadequate though it was) in response to Mr. Leonard's serious medical need, Defendant Baker did *nothing* as she watched him claw his eye out of its socket for several minutes. This violated clearly established law.

The panel excused Baker's inaction by crediting her testimony that she needed to wait for "appropriate backup" before intervening. Op. at 8. But that testimony was hotly disputed. Director Daniel Keen, defendants' expert and the County's current jail director, testified that, as Mr. Leonard dug his eye out, "plenty of officers were there [such] that we could have stepped in to stop him." AA245, R. Doc. 101-8 at 22. And Defendant Martin testified that "at least four or five" guards stood outside of the cell watching Mr. Leonard—"sufficient" to enter the cell and intervene. AA397-98, R. Doc. 101-13 at 4-5.[2] Plaintiff's expert Ken

---

[2] "[A]t least four or five" guards was plenty even on Defendant Baker's account. She testified that she had one fellow officer with her and waited, in accordance with prison policy, for three total officers. *See* Appellees'

Katsaris summarized the events as "the most egregious failure to intervene in a medical/physical crisis" he had "ever reviewed or seen" in any correctional setting—an assessment Director Keen agreed with. AA174 R. Doc. 101-6, at 15; AA255 R. Doc. 101-8, at 32.

A reasonable jury could certainly credit two defense witnesses—not to mention plaintiff's expert—over Defendant Baker's self-serving testimony that she needed to wait for backup. By accepting Defendant Baker's testimony despite this genuine dispute of material fact, the panel fumbled summary judgment's cardinal instruction: to view the evidence in the light most favorable to the moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). Viewing the evidence in that light, a reasonable jury could easily conclude that Defendant Baker exhibited deliberate indifference in violation of clearly established law when she declined to intervene in an ongoing act of self-harm directly in front of her despite "plenty" of backup. *See, e.g.*, *Olson*, 339 F.3d at 735-36; *Coleman v. Parkman*, 349 F.3d 534, 539-40 (8th Cir. 2003); Opening Br. at 42-44.

---

Br. at 14. At summary judgment, the court was obligated to credit conflicting testimony that "at least four or five" officers were present—more than enough to intervene, according to Defendant Baker.

19

Although the panel's error derived from a simple misapprehension of the summary judgment standard, it threatens vast consequences. If officials can mold facts to justify their inaction and expect courts to rob a jury of the duty to assess conflicting accounts, constitutional protection will disappear overnight.

***

The panel provided jail officials with accountability-evasion blueprints twice over. Under the panel's decision, grossly inadequate care escapes liability if it is not *no* care. And self-serving testimony goes unquestioned, no matter how clearly contradicted. These grave consequences merit *en banc* review.

## CONCLUSION

This Court should grant panel rehearing or rehearing *en banc*.

Dated: March 10, 2023          Respectfully submitted,

/s/ *Amy E. Breihan*
Amy E. Breihan
RODERICK & SOLANGE MACARTHUR
JUSTICE CENTER
906 Olive Street, Suite 420
St. Louis, MO 63101
(314) 254-8540
amy.breihan@macarthurjustice.org

20

Cal Barnett-Mayotte*
RODERICK & SOLANGE MACARTHUR
JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002

Steven A. Donner
Thomas R. Applewhite
DONNER APPLEWHITE, ATTORNEYS
AT LAW
906 Olive Street, Suite 1110
St. Louis, MO 63101

Gary K. Burger
BURGER LAW, LLC
500 N. Broadway, Suite 1860
St. Louis, MO 53101

*Admitted only in Pennsylvania; not admitted in D.C. Practicing under the
supervision of the Roderick & Solange MacArthur Justice Center.

Counsel for Plaintiff-Appellant Jamie Leonard

21

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 35(b)(2)

1.     This Petition complies with type-volume limitation of Rule 35(b)(2) of the Federal Rules of Appellate Procedure because, according to the word count function of Microsoft Word 2019, the Petition contains 3,881 words excluding the parts of the petition exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

2.     This Brief complies with the typeface and type style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook font.

Dated: March 10, 2023                                   */s/ Amy E. Breihan*

Appellate Case: 21-3755     Page: 26     Date Filed: 03/10/2023 Entry ID: 5253910

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2023, I electronically filed the foregoing document through the court's electronic filing system, and that it has been served on all counsel of record through the court's electronic filing system.

*/s/ Amy E. Breihan*

23